LEONARD *v.* TRICE.

4-2556

Opinion delivered July 11, 1932.

Hal L. Norwood, Walter L. Pope, John W. Moncrief and A. G. Meehan, for appellant.

M. F. Elms and W. A. Leach, for appellee.

SMITH, J. The Northern Road Improvement District of Arkansas County, which embraces about one-half the area of that county, was organized under special act 247 of the 1919 session of the General Assembly (vol. 1, Road Acts, 1919, page 1071). The district constructed and improved 111 miles of highway, of which 48 miles were taken into and became a part of the State highway system, under the provisions of the Martineau Road Law of 1927 (act 11, Acts 1927, page 17). The act creating the district authorized it to borrow money and issue bonds therefor to construct the proposed improvements, and this it did. These bonds are being paid by the State under the Martineau act, *supra,* but no provision was there contained for State maintenance of the 63 miles of road which were not taken into the State highway system.

The special act creating the district provides that "The district shall not cease to exist upon the completion of the roads, but shall continue to exist for the purpose of preserving them and keeping them in repair."

While the act contains express authority to issue bonds with which to raise money for construction purposes, this authority does not appear to have been conferred for maintenance purposes.

The 1927 session of the General Assembly, however, made provision for maintenance of roads constructed by improvement districts which were not taken into the State highway system. This authority is found in act 112, Acts 1927, page 312. Section 9 of this act reads as follows: "With the approval of the county court, the commissioners in each district whose roads are not wholly included in the State highway system may annually, as

necessary, levy a tax not to exceed one per cent. on the assessed benefits in the district, for the purpose of constructing, repairing and maintaining roads of the district which are not included in the State highway system, and for such purpose, in order not to delay such necessary work, such road improvement district may issue and sell certificates of indebtedness, bearing interest at a rate of not exceeding six per cent. per annum, and for an amount not exceeding one annual tax, which certificates shall be and are hereby made negotiable, and shall mature and be made payable within one year after their issuance, and shall constitute a lien and charge against the funds of such district. Provided this section shall not repeal section one (1) of act 180 of the Acts of the General Assembly of 1923.''

The 1931 session of the General Assembly passed an act numbered 63 (page 171) creating a fund to be known as ''County Highway Fund,'' paragraphs (g) and (h) of § 1 of this act containing the following provisions in regard to its disbursement:

''(g)   From the allotment made to each county, as provided for in paragraph 'f', the State Treasurer shall deduct the amount required to pay seventy-five per cent. (75%) of the maturing bonds and interest of all bonds issued by road improvement districts issued since February 4, 1927, or hereafter issued by existing road districts or annexes to existing road districts, and fifty per cent. (50%) of the maturing bonds and interest of all bonds issued by road improvement districts created after the passage of this act. The amounts for retiring such road district bonds issued by districts of any county shall be deducted from that particular county's allotment and be placed in the State Treasury to the credit of the respective districts. It being distinctly understood that no part of the allotment from one county shall be used for retiring road district bonds of any other county.

''(h)   The entire allotment of each county, where there are no such outstanding road bonds, and the residue due each county where there are such outstanding road

bonds, shall, after deducting the respective seventy-five per cent. (75%) and fifty per cent. (50%) of such maturing road bonds and interest, be remitted within ten days (10) after such allotment to the county treasurer of each county for credit to the county road fund, to be disbursed by the county judge of said county for any of the following purposes:" * * *

The third paragraph of § 6 of this act reads as follows: "Road district bonds under the terms of this act shall apply to all road district bonds issued since February 4, 1927, and all road maintenance district bonds in each of said counties, and to the payment of any bonds or coupons for improvement of public thoroughfares issued since February 4, 1927, where such district was organized under act 126 of the Acts of the General Assembly of 1923 and amendments thereto, and under act 183 of the Acts of the General Assembly of 1927 and amendments thereto, or organized under other existing laws."

Under the authority of § 9 of the act of 1927, *supra,* the road commissioners petitioned the county court for authority to levy a tax of one-half of one per cent. of the assessed benefits of the lands in the district for the purpose of repairing and maintaining the roads of the district not taken into the State highway system, and, pursuant to this authority, which the county court granted, the tax was levied. The tax thus levied amounted to $20,966.66, of which $15,176.15 was collected. The balance was not paid by the landowners, and is now delinquent. Upon levying this tax, the commissioners issued, in the name of the district, certificates of indebtedness amounting to $8,221.85, covering that amount of borrowed money.

Under act 63 of 1931, *supra,* there was allotted to Arkansas County, for the year 1931, the sum of $46,-950.25, of which $40,641.50 was paid to the county treasurer to the credit of the "county highway fund" of that county. The balance of $6,308.75 was paid to the road

improvement district by the State Treasurer under the supposed authority of act 63 of the Acts of 1931, *supra*.

This suit was brought by the county judge of Arkansas County to restrain further payments of the county highway fund to the improvement district, and to recover from the district the payment made. The chancellor granted the relief prayed, and this appeal is from that decree.

The question for decision is therefore whether the certificates of indebtedness issued by the district pursuant to the act of 1927, *supra,* are maintenance bonds within the meaning of the act of 1931, *supra*.

We think the legislative scheme as to maintenance of improvement district roads not taken into the State highway system was to provide, when necessary and when authorized by the county court, an annual tax for that purpose not exceeding one per cent. of the betterments, but that this revenue might be anticipated by the issuance of certificates of indebtedness to be paid out of the revenues when collected. We are also of the opinion that these certificates of indebtedness are not bonds within the meaning of paragraph 3 of § 6 of act 63 of the Acts of 1931.

It is not contended that the improvement district has any bonds issued subsequent to February 4, 1927, unless the certificates of indebtedness referred to are such bonds, and it is our opinion that the word ''bonds,'' as used in act 63 of 1931, was used in its technical sense, and that the certificates of indebtedness in question are not embraced within that meaning.

Certificates of indebtedness cannot be issued until the authorization of the county court has first been obtained, and their issuance is predicated upon a tax levied for their payment. Certainly these certificates of indebtedness are not to be twice paid, first with the proceeds of the tax levy and again from the county's part of the county highway fund. Nor is to be supposed that this tax money should first be collected from the land-

owners and later returned to them when the county had been allotted its proportionate part of the county highway fund.

This one per cent. maintenance tax is levied annually, if at all, and the authorization of the county court must first be obtained in each instance, and certificates of indebtedness may or may not be issued when this authorization has been obtained, but, if and when issued, they are payable out of this annual levy.

The word ''bond'' is not ordinarily applied to short-time obligations. Bonds are ordinarily issued to cover a loan payable over a period of years, while the payment of the certificates of indebtedness in question was contemplated out of the revenue derived from the tax of a single year, and within one year after their issuance. In other words, the issuance of the certificates of indebtedness was authorized as a temporary expedient whereby the collection of the tax for a single and particular year was anticipated and used in advance of its collection.

Cases such as *Arkansas State Highway Commission* v. *Kerby,* 175 Ark. 652, 300 S. W. 377, are cited as authority to support the contention that the terms ''bonds and certificates of indebtedness'' are used interchangeably, and as being synonymous in the road legislation relating to their issuance and payment.

It was held in the Kerby case, *supra,* that the Martineau Road Law, authorized payments on the construction cost of the roads built by the various road improvement districts, whether evidenced by bonds or by certificates of indebtedness. But, as was there pointed out, this was true because the purpose of that legislation was to assume and pay the construction costs of the roads constructed by the various road improvement districts in the State, however evidenced.

That holding was reviewed in the case of *Gaster* v. *Dermott School District,* 184 Ark. 536, 42 S. W. (2d) 990, and the distinction was pointed out between bonds and other evidences of indebtedness, and the subject need not be again reviewed.

The court below was therefore correct in holding that the improvement district had no right to have its maintenance certificates of indebtedness paid out of the "county highway fund," and the decree must therefore be affirmed, and it is so ordered.