The Honorable Joe Molinaro State Representative 202 Country Club Road Sherwood, Arkansas 72116
Dear Representative Molinaro:
This is in response to your request for an opinion on several questions relating to a fire protection district organized under Act 183 of 1939, as amended, A.C.A. §§ 14-284-101 to -124 (1987 and Supp. 1995) ("Act 183"). I have restated your questions and answered them in the order posed. Your first question is:
 Fire protection districts organized under Act 183 are not permitted to have outstanding notes at any one time in excess of $50,000. May such a fire protection district enter into an agreement to purchase equipment through a public facilities board when:
 (a) the public facilities board is indebted in excess of $50,000 to purchase the equipment;
 (b) the fire protection district agrees to lease the equipment from the public facilities board;
 (c) the lease requires annual payments equal to the annual payments on the principal and interest for the equipment for a period of time equal to the length of the public facilities board's indebtedness for the equipment; and
 (d) the public facilities board agrees to give title to the equipment once the fire protection district has completed the terms of the lease?
It must be noted initially that a conclusive answer to this question would require construction and interpretation of the agreement between the fire protection district and the public facilities board and, perhaps, the agreement pursuant to which the public facilities board obtained or will obtain the equipment and, if separate, any evidence of indebtedness issued or to be issued by the public facilities board in connection therewith. None of these documents has been furnished to this office. In any event, the construction and interpretation of agreements is not ordinarily within the scope of an opinion of this office, which lacks the resources to undertake a factual review of the terms of specific contracts. I will, however, outline the legal analysis that likely would guide the factual review.
As indicated in your request, a fire protection district organized under Act 183 is subject to a limit on the amount of notes it may have outstanding at any given time. The relevant statute provides:
 (a)(1) In order to acquire equipment and to do the work, the board may issue the negotiable notes of the district signed by the members of the board and bearing a rate of interest not exceeding eight percent (8%) per annum, and it may pledge and mortgage a portion of the future annual benefit assessments as collected for the payment thereof.
 (2) The petition for the creation of a district in the court order creating the district shall limit the total amount of notes that may be outstanding at any time, but the limits may be increased to the maximum prescribed in this section by a vote of a majority in value of the owners of real property in the district.
 (3) No district created pursuant to this section shall have notes outstanding at any one time in excess of fifty thousand dollars ($50,000).
(b) The district shall have no authority to issue bonds.
A.C.A. § 14-284-117.
The question, then, is whether the district, by virtue of the contemplated agreement, would have "notes" outstanding in excess of $50,000,[1] or would have any "bonds" outstanding. Neither "notes" nor "bonds" is defined by Act 183.[2] One source defines "note" in relevant part as follows:
 An instrument containing an express and absolute promise of signer (i.e. maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time. Two-party instrument made by the maker and payable to payee which is negotiable if signed by the maker and contains an unconditional promise to pay sum certain in money, on demand or at a definite time, to order or bearer.
BLACK'S LAW DICTIONARY 956 (5th ed. 1979).
The same source defines "bond" in relevant part as:
 A certificate or evidence of a debt on which the issuing company or governmental body promises to pay the bondholders a specified amount of interest for a specified length of time, and to repay the loan on the expiration date. In every case a bond represents debt — its holder is a creditor of the corporation and not a part owner as is the shareholder. Commonly, bonds are secured by a mortgage.
Id. at 161.
The cases suggest that the Supreme Court of Arkansas would interpret the words "notes" and "bonds," as used in Act 183, substantially in accord with the definitions set forth above; i.e., to mean, in essence, evidences of absolute and unconditional indebtedness. See, e.g., Davisv. Phipps, 191 Ark. 298, 85 S.W.2d 1020 (1935); Leonard v. Trice,186 Ark. 100, 52 S.W.2d 650 (1932); Arkansas County Road Improvement Dist.No. 5. v. Taylor, 185 Ark. 293, 47 S.W.2d 27 (1932); Gaster v. DermottSpecial School Dist., 184 Ark. 536, 42 S.W.2d 990 (1931); Arkansas StateHighway Comm'n v. Kerby, 175 Ark. 652, 658, 300 S.W. 377 (1927); RoadImprovement Dist. No. 4 v. Southern Trust Co., 152 Ark. 422, 239 S.W. 8
(1922); Jenkins v. International Life Ins. Co., 149 Ark. 257, 232 S.W. 3
(1921); Blevins v. Blevins, 4 Ark. 441 (1842).
As stated in Op. Att'y Gen. 94-122 (copy enclosed), which was issued in response to your request for an opinion on a similar proposal to acquire equipment for the fire protection district, "the key inquiry is whether the agreements in question contain absolute, unconditional promises to pay a debt that exceeds $50,000.00" or, if the agreement is of such a term that it would otherwise be interpreted to contain a "bond," whether it contains an absolute, unconditional promise to pay a debt, of whatever amount. Again, a conclusive answer requires a factual determination that cannot be made by this office. Your request states, however, that the district would be required to make annual payments to the public facilities board equal to the board's annual principal and interest payments on its debt to acquire the equipment, and that the district would receive title to the equipment (presumably without further payment) at the end of the lease term. These facts make it quite likely that, unless there are countervailing facts strongly indicating otherwise, the contemplated arrangement would be held to be a financing lease, involving the incurrence of debt, rather than a "true" lease, pursuant to which the lessee pays merely for the use of property during the term of the lease.See Brown v. City of Stuttgart, 312 Ark. 97, 847 S.W.2d 710 (1993).
To the extent your question concerns whether the identity of the lessor/creditor (here, a public facilities board) is relevant to the inquiry, it is my opinion that it is not. The statute makes no exception for a fire protection district's issuance of debt to any person, whether the creditor is a governmental entity, a private enterprise, or an individual. In my opinion, therefore, the fact that an arrangement may be struck with a governmental body rather than some other person is not relevant to whether the district will have issued notes in excess of $50,000, or will have issued bonds, in connection therewith.
Your second question is:
 If a fire protection district organized under Act 183 elected to reorganize under Act 35 of 1979, as amended, A.C.A. §§ 14-284-201 to -225 (1987 and Supp. 1995) ("Act 35"), would such reorganization be a dissolution governed by A.C.A. § 14-284-118 or an alteration of the plans and specifications of the district governed by A.C.A. § 14-284-120?
Arkansas Code Annotated § 14-284-118 provides:
 (a) The district shall not cease to exist upon the completion of the improvement, but it shall continue to exist for the purpose of operating the fire fighting equipment and keeping it in repair until such time as the owners of a majority in value of the real property within the district petition the county court for dissolution of the district.
 (b) Publication of the petition for dissolution, as provided for in creating the district, shall be made, and, if the county court finds that a majority in value of the real property in the district have petitioned for the dissolving of the district, the district shall be dissolved.
 (c) Parties for or against the dissolution shall have the same right of appeal as in the creation of the district.
Arkansas Code Annotated § 14-284-120 provides:
 (a) The commissioners may at any time alter the plans and specifications, which shall be filed with the county court. Notice of the filing shall be given by publication for two (2) weeks in some newspaper issued and having a bona fide circulation in the county.
 (b) If by reason of a change of plans the board of commissioners deems that the assessment of benefits has become inequitable, it shall direct the assessors to make a reassessment. If any property owner deems that by reason of the change of plans his assessment has become inequitable, he may, within two (2) weeks after the last publication of the notice, petition the board to order a reassessment. The decision of the board upon his petition shall be final unless an appeal is taken within ten (10) days to the county court. In case of a reassessment, the reassessment shall be filed, advertised, and equalized as provided for in the original assessment.
In my opinion, Act 183 makes no provision for a fire protection district organized thereunder to be reorganized so as to be governed by Act 35 or any other law. To the contrary, Act 183 expressly provides that such a district will continue in existence (and, by implication, will continue to be governed by Act 183) until a petition for dissolution is granted by the county court.[3] It is my opinion, accordingly, that persons residing within a district organized under Act 183, who wish instead to be residents of a district organized under Act 35, may accomplish that result only by dissolving the district organized under Act 183 and forming a new district under Act 35. In my opinion, A.C.A. § 14-284-120, addressing alteration of a district's "plans and specifications," refers to the plans of improvements to be made and equipment to be purchased that are formulated by the board and filed with the county clerk pursuant to A.C.A. § 14-284-108 (Supp. 1995), which section uses the phrase "plans or specifications" in describing what is to be filed. In my view, A.C.A. § 14-284-120 cannot fairly be interpreted to contemplate an alteration in a district's plans and specifications that includes the reorganization of the district under another governing statutory scheme, particularly where no statute expressly permits such a reorganization.
Your third question is:
 If a fire protection district organized under Act 183 prior to July 3, 1989, is reorganized under Act 35 after that date, is the selection of members of the board of commissioners governed by A.C.A. § 14-284-208(a) or by A.C.A. § 14-284-208(b)?
Arkansas Code Annotated § 14-284-208(a) and (b), which are part of Act 35, provide:
 (a) If at an election a majority of the qualified electors voting on the question vote "FOR" the establishment of the proposed fire protection district and the levy of assessed benefits to support the district or if an ordinance of the quorum court establishing a district is sustained, the county court shall enter an order establishing the district as described in the petitions or ordinance and shall appoint five (5) qualified electors of the district as a board of commissioners for the district.
 (1) Two (2) members of the commission shall be appointed for terms of two (2) years and three (3) members of the commission shall be appointed for terms of three (3) years.
 (2) All successor members shall be appointed by the county court for terms of three (3) years.
 (3) All appointments shall be subject to confirmation by the quorum court of the county.
 (b) The members of the boards of commissioners of fire protection districts formed after July 3, 1989, under this subchapter shall be elected at a public meeting called by the county court. The commissioners shall be elected by the qualified electors residing within the district.
As discussed above, I am of the opinion that a fire protection district organized under Act 183 cannot be reorganized so as to be governed by Act 35, and that one may be substituted for the other only by the dissolution of the district organized under Act 183 and the formation of a district under Act 35. Any such district formed under Act 35 will necessarily have been formed after July 3, 1989. It is my opinion, accordingly, that the selection of its board of commissioners will be governed by A.C.A. §14-284-208(b) rather than by A.C.A. § 14-284-208(a).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] I am assuming that the district at issue does not have a limit of less than $50,000, pursuant to A.C.A. § 14-284-117(a)(2), on the amount of its notes that may be outstanding, and that is has no other outstanding obligations that are "notes" within the meaning of the word as used in A.C.A. § 14-284-117.
[2] Considered in the abstract or in many other contexts, the words might well be found to be indistinguishable. The Supreme Court of Arkansas has said as much, holding that "the words `bond,' `note' or `certificate of indebtedness' are but convertible terms." Arkansas StateHighway Comm'n v. Kerby, 175 Ark. 652, 658, 300 S.W. 377 (1927); see alsoRoad Improvement Dist. No. 4 v. Southern Trust Co., 152 Ark. 422,239 S.W. 8 (1922). Here, however, the General Assembly obviously intended the words to mean different things, as the statute permits fire protection districts to issue a limited amount of notes, but no bonds. One feature that ordinarily might be cited as a feature distinguishing notes and bonds is security therefor: notes are often unsecured obligations, while bonds generally are secured by a mortgage or other pledge. In this case, however, the statute expressly permits "notes" of a fire protection district to be secured by the pledge and mortgage of "a portion of the future annual benefit assessments as collected. . . ." A.C.A. §14-284-117(a)(1). It is obvious, therefore, that security for the obligation, or the lack thereof, was not the difference the legislature contemplated here. In my opinion, the General Assembly intended to distinguish between notes and bonds on the basis of the lengths of their terms. "The word `bond' is not ordinarily applied to short-time obligations." Leonard v. Trice, 186 Ark. 100, 105, 52 S.W.2d 650 (1932). The statute provides no guidance, however, with respect to the length of a bond's term or the brevity of a note's.
[3] Under a provision added to Act 183 by Act 286 of 1995, a district may consolidate with another district organized under Act 183. The resulting fire protection district is, however, governed by Act 183. See
A.C.A. § 14-284-124 (Supp. 1995).