ARKANSAS FOUNDRY COMPANY *v.* STANLEY.

Opinion delivered October 10, 1921.

1. BRIDGES—SINGLE IMPROVEMENT.—Special Acts 1919, p. 74, creating the Broadway-Main Street Bridge District of Pulaski County, is not arbitrary and void in providing that the construction of two bridges across the Arkansas River, four blocks apart, shall be undertaken and prosecuted as one improvement.

2. CONSTITUTIONAL LAW—JUDICIAL QUESTIONS.—In a suit to enjoin the construction of two bridges, under Special Acts 1919, p. 74, the court will not concern itself with the expediency of the improvement.

3. BRIDGES—AUTHORITY OF BRIDGE DISTRICT TO EMPLOY BROKERS.—Special Acts 1919, p. 74, § 9, authorizing the commissioners of a bridge district to borrow money at a rate of interest not exceeding six per cent., to issue negotiable bonds therefor, did not prohibit the commissioners from employing a broker to sell the bonds, but, on the contrary, impliedly authorized them to do so if reasonably necessary to sell the bonds.

4. BRIDGES—POWER TO BORROW MONEY.—Under Special Acts 1919, p. 74, authorizing the commissioners of a bridge district to sell bonds at not less than par and to pay interest at not more than 6 per cent. and to pledge the assessments as security, such commissioners are authorized to borrow money from banks at the prescribed rate and pledge the assessments therefor.

Appeal from Pulaski Chancery Court; *J. E. Martineau,* Chancellor; reversed and affirmed.

### STATEMENT OF FACTS.

The Arkansas Foundry Company, an owner of real property lying within the limits of the Broadway-Main Street Bridge District of Pulaski County, brought this suit in equity against the commissioners of said district to restrain them from employing agents in selling and disposing of the bonds of the district, and from proceeding · further with the construction of the bridges contemplated by the passage of the act.

The complaint, amongst other things, alleges the following:

"Par. 2. Said commissioners, in order to raise money to construct said bridges, are now threatening to borrow money from the banks in the City of Little Rock by issuing, or executing, ordinary evidences of indebtedness, and are threatening to pledge and mortgage the assessments for the security of said loans. That the commissioners are not authorized to so borrow money, the only method being pointed out by section 9 of the act, which method is by the issuance of negotiable bonds at a rate of interest not to exceed six per cent.

"Par. 3. Said commissioners, having offered and failed to dispose of the bonds of the district, are also threatening and arranging to employ agents to dispose of said bonds, and to pay such agents a commission therefor; that said bonds bear interest at the rate of six per cent. per annum; and if the commissioners are permitted to pay to said agents a commission for disposing of said bonds, the commissioners will receive from the sale thereof less than the par value of the bonds. Plain-

tiff avers that under the limitations of the power and
authority of the commissioners, contained in said act,
said commissioners have no power or authority to em-
ploy such agents and pay the commission for such pur-
poses.

"Par. 4.   That the board has no power or authority
to construct the two bridges under a single improvement
district.   The General Assembly had no power to pass
an act creating a district to make two separate improve-
ments, and the act is void for want of power.

"That the construction of two bridges as proposed
by the commissioners would entail a large and unneces-
sary expense upon the taxpayers in the district, one
bridge being sufficient to accommodate the traffic between
the cities of Little Rock and North Little Rock."

The bridge commissioners filed a demurrer to the
paragraphs of the complaint above set forth, and the
court sustained the demurrer to the second and fourth
paragraphs of the complaint, and overruled it as to the
third paragraph of the complaint.   The defendants elect-
ed to stand upon their demurrer to the third paragraph
and refused to plead further.   Accordingly it was de-
creed that the defendants be enjoined from employing
agents or brokers to sell the bonds of said district, or
to pay any commissions for services in that behalf.   And,
plaintiff declining to plead further, it was decreed that
the prayer of the complaint for an injunction against de-
fendants restraining them from borrowing money and
issuing evidence of indebtedness in the form of notes and
from proceeding with the construction of the proposed
bridges across the Arkansas River, be denied, and para-
graphs two and four of the complaint be dismissed for
want of equity.

Both parties have duly prosecuted an appeal to
this court.

*George A. McConnell,* for appellant.

The construction of the two bridges four blocks apart, is not a single improvement, and cannot be likened to a road district such as found in 125 Ark. 325. The legislative finding that the improvement is a single one is a mere presumption, and is not conclusive. 141 Ark. 288. If the statute including certain territory in the district is arbitrary and discriminatory, it is void. 139 Ark. 574; 143 Ark. 203; 142 Ark. 52; 142 Ark. 73; 118 Ark. 294.

The act provides the method of raising money, which is by issuing bonds, not notes, and the board has only such power as is expressly granted by said act. 106 Ark. 39. This case is different from that in 79 Ark. 229.

The commissioners have no authority to employ brokers and pay them commissions to sell the bonds, as the act requires that the bonds shall not be disposed of at less than par and shall not bear more than six per cent. interest. In 86 Pac. 75 and 150 S. W. 90, the agency being dealt with was a city council, which has more imimplied authority than a special improvement district, as is shown by 79 Ark. 234. The practice of a city paying brokers' fees is condemned in 156 Pac. 825. Par value is defined in 50 N. E. 973, as a dollar in money for a dollar in security. See also 53 N. E. 1116. Where the statute provides that bonds shall sell at par, nothing less can be accepted, even by way of paying brokers' commission. 151 Pac. 117; 160 S. W. 1161; 160 N. W. 425; 82 Pac. 601.

*Vaughan & Rector, Moore, Smith, Moore & Trieber,* for appellee.

The power of the Legislature to create districts for the purpose of making local improvements is not open to question. 59 Ark. 513. When so exercised, it is a legislative determination, in the exercise of its power, which can not be disturbed by the courts unless the power has been exercised arbitrarily. 93 Ark. 113; 85 Ark. 12; 130 Ark. 507; 95 Ark. 496.

The court will take judicial notice of geographic and commercial conditions in connection with bridges. 125 Ark. 553; 106 *Id.* 83; 88 *Id.* 37; 181 P. 223.

The two bridges constitute one improvement. The same principle was upheld in 142 Ark. 73; *White* v. *A. & M. Highway Dist.,* 147 Ark. 160; 137 Ark. 355, and various other cases.

The board, under the statute, has the general power to borrow money and may do so by issuing notes, as well as by bonds. The power to issue negotiable bonds is permissive, and does not have the effect to limit the commissioners to that form of security. 79 Ark. 229.

The board was authorized to employ and pay brokers for the sale of the bonds. 145 S. W. 8; 130 S. W. 90, Ann. Cas. 1913 E p. 83 and cases in note on p. 86. See also 2 Dillon on Municipal Corp. sec. 895 (5th Ed.); 22 N. E. 24; 11 N. E. 1120; 1 Atl. 88; 86 Pac. 75; 78 N. W. 115; 8 Paige 527; 53 N. E. 1116.

HART, J. (after stating the facts). On the part of the plaintiff, it is contended that the two bridges contemplated in the act are four blocks apart, and that the construction of one has no relation to the other. Therefore counsel insists that the construction of the two bridges constitutes independent improvements, and that the act of the Legislature in creating the district as a single improvement district was arbitrary, and the act is consequently void. The act is entitled, "An Act to Create a Broadway-Main Street Bridge District of Pulaski County," and was approved February 5, 1919. Act 49 of the Special Acts of 1919, page 74.

Section 1 of the act creates the district, defines its territory, and names the commissioners. It authorizes the commissioners to build a bridge across the Arkansas River from a point on Broadway Street, in the city of Little Rock, to a point across the river in the city of North Little Rock to be selected by the commissioners. It also authorizes the construction of a bridge from a point on Main Street in the city of Little Rock to a point

on the opposite side of the Arkansas River in the city of North Little Rock. The proposed bridges are four blocks apart, and the court will take judicial notice that there are connecting streets between Broadway and Main Streets in the city of Little Rock and between the corresponding streets on the opposite side of the river in the city of North Little Rock.

Under our former decisions bearing on the question, the statute can not be assailed on the ground that it embraces more than one improvement. The Legislature, in passing the statute creating the district, must have found, as a matter of fact, that two bridges were necessary to carry the traffic between the two cities, and that the business centers of the proposed district were so situated, with respect to the contemplated improvements, as to justify treating them as parts of a common enterprise and as a single improvement. With the expediency of the proposed improvement in its present form, we have no judicial concern. It is sufficient for us to say that the Legislature must have found that the construction of the two bridges was necessary to secure a convenient and useful means of approach between the two cities, and that by uniting them in a single improvement they could best promote the improvement of the property within the district. When the topography of the proposed district is considered in connection with the density of population, it can not be said that the action of the Legislature providing that the construction of both bridges should be undertaken and prosecuted as one improvement is arbitrary and void. We consider the question no longer an open one in this State, and that it has been settled by the decisions cited below as well as many other decisions of this court. *Bennett* v. *Johnson*, 130 Ark. 507; *Easley* v. *Patterson*, 142 Ark. 52; *Johns* v. *Road Imp. Dist.*, 142 Ark. 73; *Tarvin* v. *Road Imp. Dist. No. 1*, 137 Ark. 355; and *White* v. *Ark. & Mo. Highway Dist.*, 147 Ark. 160.

It follows that the chancery court did not err in holding that the construction of the two bridges constituted, under the circumstances, a single improvement.

In the third paragraph of the complaint it is alleged that the commissioners are arranging to employ agents or brokers to dispose of the bonds to be issued under the provisions of the act for the construction of the improvement, and that this action is in violation of the terms of the act.

Section 9 of the original act reads as follows: ''In order to do the work, the board may borrow money at a rate of interest not exceeding six per cent. per annum, may issue negotiable bonds therefor, signed by the chairman and secretary of the board, and pledge and mortgage all assessments for the repayment thereof. Said bonds shall not be disposed of at less than par on the basis of interest at the rate of six per cent. per annum. But, if they should bear a less rate, they may be disposed of at less than par provided that the district shall receive therefor and pay thereon the equivalent of not more than six per cent. per annum at par. ''No bonds issued under the terms of this act shall run for more than thirty years; and all issues of bonds may be divided, so that a portion thereof may mature each year as the assessments are collected.'' Special Acts of 1919, No. 49 p. 74.

The evident object of the Legislature by the enactment of this section was to prevent speculation in the bonds to be issued by the commissioners for the construction of the proposed improvement and to insure to those who must pay the bonds a dollar in currency for every dollar of bonds issued. Par means equal, and par value means a value equal to the face of the bonds. So it is generally said that a sale of bonds at par is a sale at the rate of a dollar in currency for a dollar in bonds. Under the statute, the commissioners were not authorized to sell the bonds at a discount by reason of any commissions or attorneys' fees paid to the purchasers, or to their agents or attorneys or by reason of issuing bonds

drawing interest from a certain date and allowing the purchaser the use of the money loaned for a period of time thereafter.

Counsel for the plaintiff insists that under the statute the commissioners could not employ a broker to sell the bonds, regardless of the fact of whether he was the agent of the commissioners or the purchasers of the bonds. To support his contention, counsel cites the following: *Uhler* v. *Olympia* (Wash.), 151 Pac. 117; *Davis* v. *San Antonio* (Tex. Civ. App.), 160 S. W. 1161, and *Whelen's Appeal* (Penn), 1 Atl. 88. In each of these cases the purchaser was allowed a discount by way of compensation paid it, or its agents, for commission, interest, or attorneys' fees, and the court properly held, as a matter of law, that this constituted an evasion of the statute.

In *Spear* v. *Bremerton* (Wash.), 156 Pac. 825, the statement of facts shows that a contract for the sale of the bonds was made with John E. Price & Company, whereby that company agreed to attend to all the proceedings necessary in the issuance of the bonds, and to take the bonds at a discount of five per cent. The court properly held that this was clearly an evasion of the statute, and the reason given was that, under a statute forbidding the sale of the bonds at less than par, the taxpayer could not be put to the burden of paying the purchaser of the bonds anything in the way of commission or bonus, or for attorney's fees and expenses of printing, etc. So, too, in *Bay City* v. *Lumberman's State Bank* (Mich.), 160 N. W. 425, the court held that under the facts stated the transaction was a sale and purchase of the bonds by the bank from the city, and that the payment of the commission to the bank by the city was a discount in violation of the statute. The bank in that case claimed that it merely acted as the agent of the city in selling the bonds, but the court held that under the facts the bank took over the whole issue of bonds itself and resold them to its customers. The court said

that, after the bank took over the bonds, the city had no interest in the selling value of the bonds, and, if they had appreciated in value, the bank and not the city would have received the benefit. On the other hand, had they depreciated, the loss would not have fallen upon the city. The bank never made any report of its sales of the bonds to the city, and there was no accounting for the proceeds of the bonds that it sold. The bank simply took over the whole issue of the bonds and disposed of them as it saw fit to its customers.

In the case of *Paul* v. *Seattle* (Wash.), 82 Pac. 601, relied on by counsel for the plaintiff, the charter of the city provided that no debt or obligation of any kind against the city should be created by the city council except by an ordinance specifying the amount and object of the expenditure. Therefore, the court properly held that the comptroller had no implied authority to contract with a broker to sell the bonds of the city.

Another case relied on by counsel is *Fort Edward* v. *Fish* (N. Y.), 50 N. E. 973. In that case the bonds contracted to be sold by the water board included accrued interest and amounted to $50,444.44, whereas the contract price was but $50,000. The court held that the executory contract provided for the sale of the bonds at less than their par value, and was absolutely void because this was prohibited by the statute.

So it will be seen that where the contract in express terms shows that the purchaser of the bonds is to receive a discount, the courts hold as a conclusion of law that there has been an evasion of the statute. On the other hand, where the evasion of the statute appears from the facts stated and not from the contract itself, the courts hold, not as a matter of law, but as a matter of fact, that there has been an evasion of the statute. Whenever the facts show a subterfuge for an actual sale at less than par, or if the charges made are grossly unreasonable, or the transaction is attended by bad faith, the

courts will not hesitate to declare such transaction fraudulent and void. No allegation of bad faith on the part of the commissioners in seeking the service of a broker to sell the bonds is made in the complaint. The plaintiff merely alleges that under the statute the commissioners have no authority, either express or implied, to procure the service of a broker to sell the bonds or to aid them in the sale thereof.

This contention is against the weight of authority on the question. The statute gave the commissioners express power to issue and sell the bonds at not less than their par value and to pay interest thereon at not more than six per cent. per annum. The power to sell the bonds carried with it the implied authority to pay a broker to sell them, or to assist the commissioners in doing so, if this was reasonably necessary. The employment of a broker might be reasonably necessary in order to sell the bonds, and, if so, the expenses of his commission would be incidental to the express authority to sell and would fairly come within the scope of the main power. The authorities cited below sustain this view, and say that it is according to the weight of authority. *State* v. *West Duluth Land Co.* (Minn.), 78 N. W. 115; *Manitou* v. *First Nat. Bank of Colorado Springs* (Col.), 86 Pac. 75; *Church* v. *Hadley* (Mo.), 145 S. W. 8; *Armstrong* v. *Fort Edward* (N. Y.), 53 N. E. 111, and cases cited; *Miller* v. *Park City* (Tenn.), Ann. Cas. 1913 E 83, and *Brownell* v. *Greenwich* (N. Y. Ct. of Appeals), 22 N. E. 24.

We believe that the above states the law applicable to this case, and that under the facts alleged in the complaint the commissioners would have the authority, if reasonably necessary to enable them to sell the bonds, to employ a third person as a broker for that purpose.

Therefore, the court erred in overruling the demurrer to the third paragraph of the complaint, and in enjoining the commissioners from employing brokers to sell the bonds of the district.

According to the allegations in paragraph two of the complaint, the commissioners are about to borrow money from the banks of the city of Little Rock and to pledge the assessments for the security of the said loans. It is claimed by counsel for the plaintiff that the act only authorizes the commissioners to issue negotiable bonds at a rate of interest not exceeding six per cent. The complaint does not allege that the commissioners are going to pay more than six per cent. interest to the banks in the city of Little Rock from which they borrow money for the purpose of constructing the bridges. The bonds of the district would be nothing more than evidence of indebtedness of the district, and it could make no difference whether the commissioners borrowed the money in the city of Little Rock or from banks or other persons elsewhere.

The issuance and sale of the bonds of the district is nothing more than borrowing money by the commissioners for the purpose of constructing the improvement. The only prohibition in the statute is that they shall get face value for the amount borrowed and shall not pay more than six per cent. interest per annum. Consequently the court was right in sustaining the demurrer of the defendants to the second paragraph of the plaintiff's complaint.

From the views expressed, it results that the chancery court was right in sustaining the demurrer of the defendants to the second and fourth paragraphs of the complaint, and in these respects the decree will be affirmed.

It also follows that the court erred in overruling the defendants' demurrer to the third paragraph of the complaint, and for this reason the decree will be reversed and the cause remanded with directions to enter a decree sustaining the demurrer to the third paragraph of the complaint, and for other proceedings in accordance with the principles of equity and not inconsistent with this opinion.