ARKANSAS STATE HIGHWAY COMMISSION *v.* KERBY.

Opinion delivered December 5, 1927.

1.  HIGHWAYS—ASSUMPTION OF INDEBTEDNESS OF ROAD IMPROVEMENT DISTRICTS.—Acts 1927, p. 17, §§ 1, 3, providing for assumption by the State Highway Commission of the bond issues of road improvement districts and for payment of such bonds as they become due, requires the payment of certificates of indebtedness given by district commissioners under the Alexander Road Law (Acts 1915, p. 1400), and Acts Sp. Sess. 1920, § 3; the term "bond," used in the act of 1927, covering all written obligations for payment of money legally issued by commissioners for the purpose of constructing improved roads.

2.   STATUTES—MEANING OF WORDS PREVIOUSLY CONSTRUED.—It is presumed that the Legislature in framing a particular act used the word "bond" in the sense that this court had previously interpreted the word to mean, in statutes heretofore enacted covering the same subject.

Appeal from Saline Circuit Court; *Thomas E. Toler,* Judge; affirmed.

### STATEMENT OF FACTS.

This appeal is prosecuted by the Arkansas State Highway Commission to reverse a judgment of the circuit court ordering the Arkansas State Highway Commission to take over and pay certain certificates of indebtedness issued by the commissioners of Road Improvement District No. 4 of Saline County, Arkansas.

The record shows that Road Improvement District No. 4 of Saline County, Arkansas, was organized in 1919 under what is commonly known as the Alexander Road Law, and a contract was entered into between the commissioners of the district and J. P. Kerby for the construction of the improved road. It was subsequently ascertained that the improvement could not be completed within the thirty per cent. assessment as provided by the Alexander Road Law. At a special session of the Legislature in 1920 a special act was passed. Under § 3 of this act the board of commissioners was directed to carry out the plans as they then stood, or to revise them; and, in order to carry out the work of improvement, said commissioners were authorized to borrow money in a sum not exceeding $50,000, and to issue therefor negotiable bonds of the district, payable at such time and place as the board might determine, bearing interest at the rate of six per cent. per annum. The commissioners issued and sold bonds in the sum of $50,000, and the improvement was completed according to the plans, but it cost considerably more than the amount of the bond issue.

J. P. Kerby brought suit in equity against the district for the balance due, and recovered judgment in the sum of $14,353.05, which sum and the accrued interest, together with a master's fee, amounted to $16,000.

A more complete history of the matter appears in *Road Improvement District* v. *Ball,* 170 Ark. 522, 281 S. W. 5. In that case the court said that the special act of 1920, above referred to, approved the plan for the improvement and directed the commissioners to carry out the plans. It was further stated that this necessarily implied the authority to levy a tax upon benefits sufficient to pay the cost of the improvement, and operated as a repeal of the inconsistent limitation in the general statute, in so far as it applied to this particular district. The court held, in effect, that the specific direction to the commissioners in the special act to construct the improvement according to the plans removed the limitation upon the cost of the improvement. The court said that the express authority to issue bonds did not operate as a limitation of the authority to construct the improvement. Hence the complaint of Ball, which sought to set aside the decree of the chancery court in favor of Kerby against the road district, was ordered dismissed. This left the decree of the chancery court in favor of Kerby against the road district in full force, and, pursuant to its terms, the commissioners issued certificates of indebtedness in favor of J. P. Kerby and his associates in the sum of $16,000. These certificates of indebtedness bore interest from date until paid at the rate of six per cent. per annum. Each certificate recited that Road Improvement District No. 4 of Saline County, Arkansas, was due the person named in the certificate the amount of money recited in it, but the certificates were made payable at different times. Each certificate was signed by the commissioners of the district. The circuit court was of the opinon that these certificates fell within the provisions of the Martineau act, passed by the Legislature of 1927; that they are bonds within the meaning of the act; and that the Arkansas State Highway Commission, having taken over the improved road in question, under the terms of the act, it became its duty to pay all of the said certificates of indebtedness involved in this case which became due after January 1, 1927. Judgment was rendered

accordingly; and, as above stated, the case is here on appeal.

*H. W. Applegate,* Attorney General, for appellant.

*Arthur C. Thomas, Brouse & McDaniel* and *Carmichael & Hendricks,* for appellee.

HART, C. J., (after stating the facts).    The correctness of the holding of the circuit court depends upon the interpretation to be placed upon the provisions of act 11, approved February 4, 1927,   Acts of 1927, p. 17.   Under § 1 it is declared to be the policy of the State to take over, construct, repair, maintain and control all the public roads in the State comprising the State highways as defined in the act.   Section 3 provides for the amount of outstanding bonds to be determined, and for payment each year as they become due.   Section 3 reads, in part, as follows:

"The commission shall, as soon as possible, ascertain the amount of the outstanding valid bonds issued by road improvement districts in this State, the date of the maturities thereof, and the annual interest due thereon, and it shall be the duty of the circuit clerk of each county to furnish the commission with such information.   The commission shall, each year, beginning with the year 1927, allot to each road district in the State having outstanding bond issues an amount equal to its bonds maturing during the year, together with the interest payable by such districts during the year, plus a paying charge of one-eighth of one per cent. of bonds to be paid and one-fourth of one per cent. of interest to be paid, and shall certify to the State Auditor the amount allotted to each road district."

The second paragraph of the section is as follows:

"In case the appropriation of six and a half million dollars allotted to the road improvement districts is insufficient to pay in full the maturing bonds and interest for the year, the commission shall allot to each district its pro rata of such appropriation."

The last paragraph of the section is as follows:

"All of the road districts referred to in this section are hereby taken over by the State, but only such portions

of such roads which are now or may hereafter be embraced in the State highway system shall be maintained by the State.''

The term ''bond,'' as used in the act as above quoted, evidently refers to the term ''bond'' as used in acts creating road improvement districts, and authorizing the commission to borrow money to construct the improved roads, and to issue negotiable interest-bearing bonds therefor.

In *Davenport* v. *Dodge County,* 105 U. S. 237, 26 L. ed. 1018, a county bond was defined to be an instrument that implies that an obligor is bound to do what it is agreed shall be done. This is substantially what this court has held bridge and highway improvement district bonds to be.

In *Arkansas Foundry Co.* v. *Stanley,* 150 Ark. 127, 233 S. W. 922, it was held that, under the special act creating a bridge district and authorizing the commissioners to sell bonds at not less than par, and to pay interest at not more than six per cent., and to pledge the assessments as security, such commissioners are authorized to borrow money from banks at the prescribed rate and pledge the assessments therefor.

Section 9 of the act provided that, in order to do the work, the board might borrow money at a rate of interest not exceeding six per cent. per annum, might issue negotiable bonds therefor, signed by the chairman and secretary of the board, and pledge and mortgage all assessments for the repayment thereof. The section further provided that the bonds should not be disposed of at less than par.

It was contended by an owner of real property within the bridge district, who brought suit, that the act only authorized the commissioners to issue negotiable bonds, and that the commissioners were about to borrow money from the banks of the city of Little Rock and to pledge the assessments for the security of the said loans, in violation of the provisions of the act. The court said the issuance and sale of the bonds of the district was nothing.

more than borrowing money by the commissioners for
the purpose of constructing the improvement. The court
further said that the bonds of the district would be noth-
ing more than evidence of indebtedness of the district,
and it would make no difference whether the commis-
sioners borrowed the money in the city of Little Rock or
from banks or other persons elsewhere. Consequently,
it was held that the chancery court rightly sustained a
demurrer to this paragraph of the complaint. This was
tantamount to holding a bond and a certificate of indebt-
edness such as was issued in the case at bar were sub-
stantially one and the same thing, and that to hold other-
wise would be to put form above substance.

In the later case of *Road Improvement District No.
4* v. *Southern Trust Co.,* 152 Ark. 422, 239 S. W. 8, it was
held that, under a statute authorizing the board of com-
missioners of a road improvement district to borrow
money at a rate of interest not exceeding six per cent.,
and to issue negotiable bonds therefor, and to pledge,
assign and mortgage all assessments for the repayment
thereof, the board was authorized to issue a negotiable
note for borrowed money. It was contended that the dis-
trict was not authorized to execute a negotiable note
under the provisions of the act creating it. The court
said:

"While the act does specify that the board may 'bor-
row money' and may issue 'negotiable bonds,' yet the fact
that the resolution designated the instrument to be exe-
cuted for the money borrowed as a 'note' instead of a
negotiable 'bond,' and the fact that the instrument took
the form of a 'note' instead of a 'bond,' can make no dif-
ference. Where the indebtedness which the instrument
represents is for money borrowed, a technical compliance
with the law as to the form of the instrument evidencing
the debt, whether by negotiable note or negotiable bond,
is wholly immaterial. Either would be evidence of indebt-
edness of the district, and, in the eyes of the statute, 'note'
and 'bond' would be but convertible terms."

Our earlier case of *Arkansas Foundry Co.* v. *Stanley*, 150 Ark. 127, 233 S. W. 922, was cited in support of the holding. We must presume that the framers of the act under consideration had these cases before them, and used the word "bond" in the sense this court had interpreted it to mean in the acts creating the road districts and authorizing the commissioners thereof to issue bonds for the purpose of securing money with which to construct the improvement. The evident and avowed purpose of the act under consideration was to aid road districts, which had become overburdened with debt, in the construction of the improved roads, and we are of the opinion that the word "bond" as used in the act was meant to include promissory notes and certificates of indebtedness issued by the district for the purpose of constructing the improved roads; and that the words "bond," "note" or "certificate of indebtedness" are but convertible terms. In short, we are of the opinion that the expression "bond," as used in the act under consideration, was intended to cover all written obligations for the payment of money legally issued by the commissioners for the purpose of constructing the improved roads under the original acts creating the road districts.

Acts 112 (Acts 1927, p. 312) is supplementary to act 11 (Acts of 1927, p. 17), and there is nothing in its language or within the scope of its purpose to indicate that the Legislature meant to change the meaning of the word "bond." Hence the meaning of the word "bond" as used in act 11 is not changed by act 112. Neither do we think that, when the object and purpose of act 112 are considered in connection with act 11, the term "bond" was used in it in any different sense than it was used in act 11. It is agreed that the road in the district under consideration was taken over by the Arkansas State Highway Commission, and that it is a part of the highway system.

It follows that the judgment of the circuit court was correct, and it will be affirmed.