**KERSH LAKE DRAINAGE DIST. OF JEF-
FERSON, LINCOLN, AND DESHA COUN-
TIES, ARK., v. STATE BANK & TRUST
CO. OF WELLSTON, MO.**

No. 10572.

Circuit Court of Appeals, Eighth Circuit.
Aug. 27, 1936.

Rehearing Denied Oct. 5, 1936.

E. W. Brockman, of Pine Bluff, Ark., for appellant.

G. B. Rose, of Little Rock, Ark. (J. F. Loughborough, A. W. Dobyns, A. F. House, and J. W. Barron, all of Little Rock, Ark., on the brief), for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by Kersh Lake Drainage District to reverse a judgment rendered against it on certain negotiable certificates of indebtedness issued by the commissioners of the district in its name on various dates after March 1, 1913, to July 1, 1919, and maturing on the first day of August of each year from 1929 to 1933, inclusive, and on the first day of August, 1935. The certificates were in the amount of $500 each, and each recited on its face that the drainage district was indebted in that amount to Hahn & Carter as contractors for work done in the construction of the drainage system of the district; that the certificate was issued to the contractors doing the work for work actually performed in accordance with authority conferred on the district by an act of the General Assembly of the State of Arkansas approved May 27, 1909 (Acts 1909, p. 829); that the district had been duly organized under the act, and all things prerequisite to the issuance of the certificate had been performed as required by law; that the lands of the district had been duly assessed to pay for the work; that the certificate, together with others theretofore and then issued, with all interest computed thereon, did not exceed the amount of the betterments as-

sessed against said lands; and that a tax had been duly levied upon said lands in pursuance of law of a sum sufficient to pay the certificate and all other certificates theretofore and then issued. The holders had acquired the certificates for value in due course before maturity, and the district had paid all certificates that matured up to the year 1929 and all interest that had accrued semiannually until August, 1932.

The district defended on the grounds that the commissioners of the district were without authority to issue certificates of indebtedness binding on the district; (2) that the certificates were issued in violation of the judgment fixing the amount to be issued and were, therefore, void; (3) that the certificates were issued fraudulently without full consideration to the district; and (4) that the cost of the improvement exceeded the value of the benefits assessed.

1. It appeared that the drainage district was duly organized as recited in the certificates, and that its original contract for the construction of its drainage system contemplated that the work would be paid for through a bond issue. On March 4, 1913, the commissioners of the district applied to the circuit court of Jefferson county, Ark. (that being the court having jurisdiction in the premises), to assess a tax upon the property in the district to cover the estimated cost of the construction of the drainage system, being the bond issue of $135,000 with interest and 10 per cent. for unforeseen contingencies, in the total amount of $272,782.12, and the circuit court duly entered its judgment accordingly. Thereafter, and before the bond issue was consummated, the authority of the district to issue bonds without a petition of landowners was revoked by the Legislature, and the district entered into an agreement with the contractors to pay them for the work by issuing to them its negotiable certificates of indebtedness as the work progressed and in accordance with estimates to be made by the engineer. The authority to issue such certificates for such work was conferred upon the commissioners by section 3623, C. & M. Digest, "In order to hasten the work, the board may * * * issue to the contractors who do the work its negotiable evidences of debt, bearing interest at not exceeding six per cent."

As the work progressed and on December 30, 1915, the commissioners of the district appeared again in the circuit court of Jefferson county and reported that the cost of the required improvements would amount to $155,000 (instead of $135,000). They petitioned for a levy of the tax upon the property of the district accordingly and the court entered its judgment as prayed. Later, on June 27, 1919, another petition was filed in the same court by the commissioners of the district reporting that the cost would amount to $181,500 (instead of $155,000), specifying the items that made up the total amount, and the court entered its order that "there be levied and collected between the first Monday of January and the tenth day of April of each of the years 1920 to 1934, inclusive, and until the entire indebtedness aforesaid is paid in full, 6½% of the benefits which have been assessed against the real property in the district by reason of the improvements * * *."

The negotiable, interest-bearing certificates were issued to the contractors amounting in the aggregate to the full sum of $181,500, all of which were negotiated by the contractors and sold to the public in due course.

It is not questioned that prior to the passage of Act No. 150 (page 611), March 8, 1913, the drainage district was empowered by section 3623, above quoted, to issue negotiable certificates to contractors to pay for drainage construction, but appellant contends that the repeal of the district's authority (without petition of land owners) to issue "negotiable bonds" by implication repealed authority to issue "negotiable certificates." It is pointed out that there is close similarity between bonds and certificates, as has been recognized by the courts in cases cited. Board of Commissioners of City and County of Denver v. Home Savings Bank, 236 U.S. 101, 35 S.Ct. 265, 59 L.Ed. 485; Gaster v. Dermott School Dist., 184 Ark. 536, 42 S.W.(2d) 990; Arkansas State Highway Comm. v. Kerby, 175 Ark. 652, 300 S.W. 377; Road Improvement Dist. No. 4 v. Southern Trust Co., 152 Ark. 422, 239 S.W. 8; Arkansas-Foundry Co. v. Stanley, 150 Ark. 127, 233 S.W. 922. But in this instance the Legislature had before it a statute (section 3623) which empowered the district "in order to hasten the work" to "borrow money" and "issue negotiable bonds therefor" and which also, with equal particularity empowered the district to "issue to the contractors who do the work its negotia-

ble evidences of debt." The new act, No. 150, provided that "hereafter it shall be unlawful for the commissioners * * * to issue any bonds whatever without first being petitioned," etc. It is apparent that there are risks of loss to the district incident to the borrowing of a lump sum of money upon a bond issue which are not present when the negotiable evidences of debt are made up and doled out to contractors at short intervals and in accordance with engineers' estimates of work actually done. We think that upon well-settled principles we should not enlarge upon the meaning of Act No. 150 to hold that it repealed by implication the provisions of the existing law which specifically empowered the district to issue negotiable evidences of debt to the contractors. Act No. 150 did not assume to make such repeal either by any reference in its title or by any words found in the body of the act, and there was no ambiguity in its terms to warrant judicial construction. Wallace v. Cutten, 56 S.Ct. 753, 80 L. Ed. 1157; Johnson v. Page, 191 Ark. 1011, 88 S.W.(2d) 839; State v. Kantas, 190 Ark. 1092, 82 S.W.(2d) 847, 849; Pace v. State, 189 Ark. 1104, 76 S.W.(2d) 294, 298; McDonald v. Wasson, 188 Ark. 782, 67 S.W.(2d) 722, 725, citing 59 C.J. 905.

■■ 2. It is also contended for the drainage district that the commissioners had no power to increase the district's obligations for the work from $135,000 to $155,000, and then to $181,500, as was done. The point, as stated in the brief, is: "The judgments rendered in the Jefferson Circuit Court December 30, 1915, and June 27, 1919, respectively, did not authorize the commissioners to issue certificates of indebtedness in the total sum of $181,500.00."

The applicable statutes of Arkansas contemplated that the power to determine upon the adoption and plans for drainage construction, to contract for the work, to agree upon the cost thereof, and to issue negotiable evidences of indebtedness therefor, should be vested solely in the commissioners of the drainage district (sections 3612, 3623, 3625, and 3633, C. & M. Digest), and the commissioners were also given power to make necessary changes in the plans as the work progressed (section 3625). But, in order that a valid tax could be levied to pay for the cost of the work and evidences of indebtedness issued on account thereof, the commissioners were empowered to call upon the circuit court (in this case, of Jefferson county) to enter upon its records an order, which should have all the force of a judgment, levying a tax upon the real property of the district sufficient to pay the estimated cost of the improvement, with 10 per cent. added for unforeseen contingencies. Section 3617.

It is clear that the judgment which the circuit court of Jefferson county entered at the instance of the commissioners of the district on March 4, 1913, was not intended to and did not fix or limit the cost of the drainage work. That was not a matter within the jurisdiction of the court. The order merely levied a tax of 3 per cent. annually upon the assessed benefits for the years 1914 to 1921, inclusive, and 6 per cent. for the years 1922 to 1934, inclusive, or until all certificates were paid. Subsequent changes of the plans caused the estimated cost to be increased, and the commissioners were required to and did apply to the circuit court to order a levy of taxes to cover additional certificates of indebtedness issued, and the court duly entered such orders on December 30, 1915, and June 27, 1919, respectively. The power to incur the increased obligations and to pay therefor with certificates of indebtedness was not dependent upon the orders of the circuit court, but such power was vested in the commissioners of the district by the statutes. This contention of the district, therefore, is not sustained.

■■■ 3. In support of its contention that the certificates were fraudulently issued without full consideration, the drainage district introduced testimony upon the trial of the case that no books of account could be found in the records of the district which disclose items of work done by the contractors Hahn & Carter up to the amount of the certificates issued to them ($181,500). In June of 1919, the commissioners reported to the circuit court of Jefferson county that that amount was the cost of the work done and that certificates were issued in that amount (itemizing them), and the circuit court acted on that representation. A carbon copy of an account of the contractors was found in the files of the district reflecting payments up to April, 1916, of only $121,155.70, items of the account corresponding with amounts recorded in the minute books of that period which were found and produced. There was also testimony that the drainage improvements were then completed.

646

On the other hand, a witness testified that the drainage works were not then completed, but that laterals were subsequently dug and other obligations to the contractors were incurred and accrued. Some members of the board and the contractors had died or their testimony was not available, and the plaintiff was unable to affirmatively prove that the contractors did work in the full amount of the certificates issued to them. It relied upon the recitals of the certificates that "this certificate is issued to the contractors doing said work, for work actually performed."

It is firmly settled that such recitals contained in negotiable instruments put upon the market for sale are conclusive upon the issuing body when it is shown that the power existed in that body to take the necessary steps to make the recitals conform to the truth and to issue the certificates. Caldwell v. Guardian Trust Co. (C.C.A.8) 26 F.(2d) 218, 219, and cases therein cited. Whether the contractors had done all the work up to the amount of the certificates issued to them was known to the commissioners of the district. They were the ones who contracted and had the entire responsibility of determining when the work was done and the amount payable, and there is no public record to which the purchasers of the certificates might have referred contradicting the recitals that the certificates were issued "for work actually performed." On the contrary, the record made by the circuit court of Jefferson county, June 27, 1919, reflected work done in the full amount of certificates issued. The purchasers of the certificates were entitled to rely upon the statements made by the board appearing on the face of the certificates that work had been done in the full amount of the certificates issued.

4. The appellant also contends that the total certificates issued together with interest accrued and accruing thereon were in excess of the benefits assessed against the property of the district on account of the improvement, and attention is called to the fact that taxes have been adjudged which in the course of years have aggregated more than 100 per cent. of the original assessment. But as the act conferred the power to issue the negotiable certificates upon the commissioners of the district, and imposed no restrictions upon them, they had the complete power in themselves to determine the existence of the conditions precedent to the issuance of the

certificates. They had the duty of making the assessments and of determining the cost of the improvement and of paying therefor with certificates. They represented by their recitals in the certificates that "all things prerequisite to the issuance of this certificate has been performed as required by law; that the lands of the district have been duly assessed to pay for the work and that this certificate, together with others heretofore and now issued, with all interest computed thereon, do not exceed the amount of the betterments assessed against said lands," and such recitals were binding upon the district when the certificates came into the hands of innocent purchasers for value before maturity. Caldwell v. Guardian Trust Company, supra.

Each of the defenses urged by the district has received full consideration; but as we are of opinion that the commissioners had the power to issue the certificates and the power to take the necessary steps to make the recitals conform to the truth, the recitals meet every objection that has been presented.

Affirmed.

STONE, Circuit Judge, concurs in the result.