## WHITAKER & CO. v. GRABLE.
### No. 11583.

Circuit Court of Appeals, Eighth Circuit.
Feb. 20, 1940.

---

Parker Parker, of Dardanelle, Ark., for appellant.

Neill Bohlinger, of Dardanelle, Ark. (Harry Neelly, of Searcy, Ark., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

WOODROUGH, Circuit Judge.

This suit was brought against Sewer Improvement District No. 1 of Dardanelle, Arkansas, by the holder of certain bonds issued by the District and secured by pledge of "all the uncollected assessments of the District." The bonds being in default, the plaintiff, pursuant to the terms of the pledge, obtained appointment of a receiver to enforce the pledge and by final decree the

bondholder's lien was established and the receiver was ordered to apply the proceeds to the satisfaction of the bond indebtedness. Mr. Conn Grable, who holds certain certificates of indebtedness which were issued by the sewer district and were subsequently reduced to judgment against the District in the state court, intervened in the bondholder's suit and obtained a decree therein which accorded him a lien against the pledge then in the receiver's hands "on a parity with" the lien of the bondholders and which required the receiver to make distribution pro rata on the bonds and the certificates. The receipts are asserted to be inadequate for both, and the bondholder appeals, contesting the right of the holder of the certificates and judgment to any lien in parity with its lien against the security pledged by the District for the payment of the bonds.

Many points are raised against the procedure by which the decree in favor of the intervener was arrived at, but we direct our inquiry to the questioned sufficiency of the facts alleged by the intervener to justify the decree in his favor. It is undisputed that the bonds were lawfully issued to pay for the installation of the sewer system for the use of the inhabitants of the District and that the pledge executed in writing by the District to secure the payment of the bonds was in all respects in accord with the relevant statutes of Arkansas, Kirby's Digest, §§ 5664–5742, and that by its terms "All uncollected assessments levied by the ordinance of the town Council of the said town of Dardanelle (describing it) * * * together with all assessments that * * * may hereafter be levied upon the real property in said District * * * except the assessments for the first year" were by the District "pledged, assigned, transferred and set over" to a designated trustee to effectuate the pledge, and it was agreed that in proceedings to foreclose the pledge a receiver should be appointed to collect all of said assessments. The bonds bear date September 1, 1917, and on their face contain the promise of the District to pay the amounts named, refer to the law under which they are issued, recite that all conditions have been complied with and that the assessments are pledged for their payment, principal and interest.

On the other hand, the pleadings in intervention show that the certificates of indebtedness held by the intervener contain no analogous recitals. There are three certificates. The first was issued June 28,

1918, and recites that the District is indebted to the party named therein for services rendered and promises to pay him or order the sum of $400 on or before July 1, 1919, with interest at six per cent. On the face of the second, dated November 15, 1918, the District promises to pay the persons named or bearer, the sum of $661, with interest, on or before May 15, 1919, and recites that the obligation "is payable out of taxes heretofore levied by the District which are sufficient to meet said obligation at maturity". The third bears the same date and is payable on or before November 15, 1919. It is in form like the second, the amount payable on or before November 15, 1919, being $1,000. Comparison of dates discloses that the certificates were issued long after the plaintiff's bonds and pledge, and they contain no agreement by the District to pledge security for their payment.

When the intervener brought his suit on the certificates against the District in the state court, he alleged in his complaint as to the first certificate that it had been issued by the District "in order to carry out the purposes for which the defendant district was organized" without further indication of the consideration or origin. As to the other two, he alleged that the District had issued them "in order to pay a part of the cost of installing the sewer system constructed by the defendant district". On February 11, 1935, he obtained a judgment by default in the ordinary form of a money judgment in law actions, the writs of execution to be issued "upon application."

■ We are not persuaded that the mere issuance and delivery by the District of the three certificates of indebtedness gave to their holder any lien upon the property in the District or upon the assessment of benefits theretofore made against the property and pledged for the payment of the District's bonds.

In the argument to support the intervener's decree, it is pointed out that under Arkansas decisions "certificates of indebtedness," "notes", "warrants" and other evidences of debt issued by municipal subdivisions have under various circumstances been held to come under the same category as "bonds", and the holders have been accorded rights as creditors equal to the rights of creditors holding bonds. All of the decisions referred to have been carefully reviewed, but regardless of what the documents held by the intervener might be called, we fail to find in the cases any basis for his claim that the issuance and delivery thereof by the District gave rise to any lien in favor of the holder against any of the property in the District. They did not purport to do so, and we find no statute imputing such an effect. The cited statute, Kirby Digest, § 5720, provides: "The [Sewer Improvement District [1]] board may borrow money not to exceed ninety per centum of the estimated cost of the work, at a rate * * * not exceeding ten per centum per annum, and may pledge all uncollected assessments for the repayment thereof." Act, March 22, 1881.

■ Although this statute empowers the Board to pledge assessments to secure money borrowed,[2] it does not compel the Board to do so. It does not itself create any pledge or lien in favor of whoever advances money or services to the District but merely says that the District Board may create such pledge.

The reliance of the intervener must be upon his judgment. Although the bondholders were not parties to the judgment and it was taken by default, we may here assume that it adjudicated against the District that the certificates had been duly issued "in order to carry out the purposes for which the District was organized" and "in order to pay a part of the cost of installing the sewer system constructed by the sewer district", as had been alleged in the complaint.

■ It has been held in Arkansas that a money judgment against such a municipal subdivision as is here involved operates to create a general lien against the property in the district analogous to a certain extent to judgment liens against the property of other judgment debtors. Keith v. Drainage District, 183 Ark. 786, 38 S.W.2d 755. But a judgment lien takes effect only from the date of the judgment and is subordinate to all valid prior liens. McGuigan v. Rix, 140 Ark. 418, 215 S.W. 611.

■ It is apparent here that the valid special lien of the bondholders had attached and continued eighteen years before inter-

---

1 Supplied.
2 See Arkansas Foundry Co. v. Stanley, 150 Ark. 127, 233 S.W. 922; Road Improvement District No. 4 v. Southern Trust Co., 152 Ark. 422, 239 S.W. 8; Logan v. Sidewalk District No. 6, 163 Ark. 591, 260 S.W. 407. Cf. Kirby's Digest, §§ 5713, 5714.

vener's judgment was entered [3] and whatever lien was created by the judgment was subsequent and inferior to the lien of the bondholders.

Intervener has contended that the decision of the Supreme Court in Arkansas State Highway Commission v. Kerby, 175 Ark. 652, 655, 300 S.W. 377, gives support to his claim for lien on a parity with the lien of the bondholders, but we see none. In that case it appeared that the state of Arkansas in pursuance of its plan to incorporate highways into a state system had provided a fund to discharge debts incurred by the various districts in building district roads. It was held that debts of the districts evidenced by certificates of indebtedness were within the scope of the Act and were dischargeable out of the funds equally with debts evidenced by bonds.

In the more recent case of Gaster v. Dermott School District, 184 Ark. 536, 42 S.W. 2d 990, 992, a taxpayer obtained injunction against the issuance of refunding bonds by the District. The Supreme Court considered the foregoing case and quoted from the opinion: "The evident and avowed purpose of the act [The Martineau Road Act] under consideration was to aid road districts which had become overburdened with debt in the construction of the improved roads, and we are of the opinion that the word 'bond,' as used in the act, was meant to include promissory notes and certificates of indebtedness issued by the district for the purpose of constructing the improved roads, and that the words 'bond,' 'note,' or 'certificate of indebtedness' are but convertible terms. In short, we are of the opinion that the expression 'bond,' as used in the act under consideration, was intended to cover all written obligations for the payment of money legally issued by the commissioners for the purpose of constructing the improved roads under the original acts creating the road districts."

Continuing, the court said:

"The judgment of the circuit court, directing the highway commission to pay the certificates held by Kerby, was therefore affirmed, but this order was affirmed because the Arkansas state highway commission had taken over the roads of the improvement district which had issued the certificates of indebtedness, and, having done this, it was held that, under the terms of the act under which the roads had been taken over and made a part of the state highway system, it became the duty of the commission to pay all of the said certificates of indebtedness involved in that case. It was therefore declared immaterial whether, this indebtedness was evidenced by promissory notes, certificates of indebtedness, or negotiable bonds, and that these would be treated as convertible terms, inasmuch as the General Assembly had assumed the payment of the district's obligations.

\* \* \* \* \* \*

"Here, under the allegations of the complaint, the school district has outstanding thousands of dollars of warrants, issued for teachers' salaries and other current expenses, attached to notes given for this borrowed money, and while this is indebtedness of the district, it is not bonded indebtedness, and there is therefore no authority to issue bonds to cover those debts, for the reason that the district has now outstanding bonds in excess of seven per cent. of the assessed value of the property of the district."

See also Arkansas County Road Imp. Dist. No. 5 v. Taylor, 185 Ark. 293, 47 S.W. 2d 27; Kersh Lake Drainage Dist. v. State Bank & Trust Co., 8 Cir., 85 F.2d 643, 644; Trice v. Arkansas State Highway Commission, 186 Ark. 100, 52 S.W.2d 650.

None of the Arkansas or federal cases afford support for the claim that the obligation of the lien lawfully given by the District to the bondholder here may be impaired by compelling the bondholder to share its security on a parity with the holder of a subsequently issued certificate of debt long afterwards reduced to simple money judgment. The Arkansas cases in which successive bond issues have had the same security pledged for their payment are not relevant here, no pledge having been given for these certificates. Cf. Luehrmann v. Drainage District, 8 Cir., 104 F.2d 696; Howe v. Long Prairie Levee District, 187 Ark. 725, 728, 62 S.W.2d 10; McNear v. Little Red River Levee District, 8 Cir., 293 F. 717; Hoehler v. W. B. Worthen Co., 154 Ark. 444, 450, 243 S.W. 822.

■ The decree herein according a lien to the intervener on a parity with the lien of the bondholder must therefore be reversed. But we do not hold that Mr. Grable was

---

[3] Miller v. Hamilton, 8 Cir., 233 F. 402; Hopson v. Oliver, 174 Ark. 659, 298 S.W. 489; First National Bank v. Wells River Sav. Bank, 179 Ark. 834, 18 S.W.2d 370.

without right to intervene in the bondholder's suit. Such intervention appears to be proper under the Arkansas statutes and decisions. Pope's Digest §§ 7336, 7337; Dickinson v. Mingea, 191 Ark. 946, 88 S.W.2d 807; Rogers Paving Imp. Dist. v. Swofford, 193 Ark. 260, 99 S.W.2d 577. But the lien of the bondholders is and must be maintained as prior and superior, and the intervener's recovery must be subject to and in recognition of such priority.

Reversed and remanded with instruction to enter new decree in conformity herewith.